## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

RENEE HANDLEY,

       Plaintiff,

v.

ROWAN UNIVERSITY and NOAH
WEINSTEIN, *in his individual capacity*,

       Defendants.

Civil No. 21-16889 (RMB/EAP)

**OPINION**

**APPEARANCES**
Bradley R. Flynn, Esq.
Montgomery Law, LLC.
1420 Locust Street, Suite 420
Philadelphia, PA 19102

    *On behalf of Plaintiff*

Patricia M. Hamill, Esq.
Christopher M. Lucca, Esq.
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102

    *On behalf of Defendant Noah Weinstein*

James Andrew Keller
Colleen Fox
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

    *On behalf of Defendant Rowan University*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motions to Dismiss brought by Defendant Noah Weinstein [Docket No. 32] and Defendant Rowan University [Docket No. 34]. For the reasons expressed below, the Court will grant, in part, Defendants' Motions to Dismiss, and Plaintiff's Amended Complaint will be dismissed, in part, without prejudice.

## I.     FACTUAL BACKGROUND

Plaintiff Renee Handley alleges the following facts in support of this suit. Plaintiff enrolled at Rowan University in July 2017 and, at the time of filing her Amended Complaint in December 2021, was a current student in good standing in her senior year. [Docket No. 25 ¶¶ 1, 10.] Plaintiff has been diagnosed with a learning language disability, dyslexia (specific learning disability in reading), depression, anxiety, ADD, scoliosis, and PTSD. [*Id.* ¶¶ 10–11.] As a result of these disabilities, she is "easily overwhelmed and has trouble navigating emotionally-difficult situations." [*Id.*]

Defendant Rowan University is a public university that receives federal funds and employs Defendant Noah Weinstein as a disability coordinator. [*Id.* ¶¶ 2, 8, 9, 13.][1] At all relevant times, Plaintiff states that she has informed Rowan of her disabilities and the way that these disabilities impact her ability to access her

---

[1] Plaintiff also refers to Defendant Weinstein as the "disability program assistant" in her reply briefs. [*See* Docket No. 35, at 1; Docket No. 38, at 34.]

education. [*Id.*] The Court notes, however, that Plaintiff only generally alleges that Rowan was aware, without specifying whom specifically she made aware and when.

The Amended Complaint alleges that Weinstein and others engaged in a variety of disturbing conduct throughout Plaintiff's time at Rowan—including stalking, harassment, inappropriate comments, and dating and sexual violence. According to the Amended Complaint, Weinstein started to make romantic and sexual advances towards Plaintiff in the spring 2018 semester and continued to do so until around August 2021. [*Id.* ¶ 12.] Plaintiff alleges that, in 2018, Weinstein "sent shirtless and inappropriate texts to Plaintiff over Snapchat." [*See id.* ¶¶ 12, 15.] More specifically, Plaintiff alleges that

> Mr. Weinstein would text Plaintiff and tell her "how beautiful" she is. Mr. Weinstein also would tell Plaintiff that she is his "best friend," how he "used to be lonely until he met [her]." Mr. Weinstein would show jealousy and would demand that Plaintiff stop wearing crop tops because "it's not appropriate." Mr. Weinstein's sexual and romantic overtures also included him flirtatiously asking, "why are you wearing that dress?; there's a flower on your boob." When Plaintiff asked him to stop sexually harassing her, he responded, "I can say whatever I want."

[*Id.* ¶ 12.]

Plaintiff next alleges that, starting in or around November 2018, a male Rowan student was granted access to Plaintiff's dormitory, where he repeatedly sexually assaulted and raped Plaintiff on two occasions.[2] [*Id.* ¶ 16.] During these encounters, this student slapped Plaintiff across the face. [*Id.*] He also later stalked her. [*Id.*] In or around April 2018, Plaintiff told Weinstein about concerns regarding

---

[2] Plaintiff does not identify the male student by name in the Amended Complaint.

dating violence at university events, which included stalking and rape. [*Id.* ¶ 13.] Plaintiff alleges that he responded by saying that if "something happened to [Plaintiff] at a frat house, it was [her] fault." [*Id.*] Plaintiff explains that when she talked with Weinstein about concerns with respect to on-campus dating violence, Weinstein would often yell at Plaintiff, appear shirtless on a video conferencing call with her, call her a "slut," and tell her it would be her own fault if she got raped. [*Id.* ¶¶ 14, 15, 17–19, 21, 22, 27, 29.] Plaintiff alleges that, on May 18, 2018, Plaintiff made a report via text message to Weinstein stating that the male who was stalking her had contacted her, but Weinstein never responded. [*Id.* ¶ 14.] It is not clear whether this male student is the same stalker as Plaintiff referred to previously in the Amended Complaint.

Plaintiff also claims that, on or around January 23, 2019, Plaintiff told Weinstein in person that a male student raped her. [*Id.* ¶¶ 17, 20.] Plaintiff does not clarify in her Amended Complaint whether this male student is the same individual from her prior assault. Plaintiff alleges that Weinstein "took no action," and yelled at her for getting raped. [*Id.* ¶¶ 17–18.] Subsequently, the rapist allegedly stalked her for the next two weeks. [*Id.*]

Then, Plaintiff alleges that "around that time" she reported the rape to supervisory personnel, John Woodruff. [*Id.* ¶ 18.] Woodruff stated that he would "look into [the rape] but" he did not "believe" Plaintiff.  [*Id.*] Plaintiff further alleges

that during this same meeting the Dean[3] said Plaintiff "did not value her spot at Rowan University" and accused her of causing problems by reporting the rapes. [*Id.*] The Dean then emailed her parents without her consent. [*Id.*] Moreover, Plaintiff alleges that in early February 2019, Weinstein told Plaintiff he could not go to the police station with her to report the rape because he was friends with the man who raped Plaintiff. [*Id.* ¶ 19.] Plaintiff contends that Weinstein instructed Plaintiff that she should go to the police station with a different friend to report the rape. [*Id.*]

In addition, Plaintiff states that she had a limited ability to understand and navigate the Title IX process because of her disability, and that Rowan refused to assist her. [*Id.* ¶ 39.] Rowan informed her that it would provide her with a Title IX advocate to take her report on February 7, 2019. [*Id.* ¶ 20.] Christine Pickle, an attorney representing Rowan, offered to be Plaintiff's advocate. [*Id.*] Nevertheless, Plaintiff claims that this presented a conflict of interest and an unfair process. [*Id.*]

Plaintiff alleges that in February 2019, Weinstein yelled at Plaintiff, blamed her, and mocked her when she met with Weinstein in the Disability Services office to discuss sexual violence. [*Id.* ¶¶ 21–22.] More specifically, Plaintiff alleges that in response to Plaintiff reporting that her emotional health and ability to participate in her education was suffering, as a result of the rape, Weinstein asserted: "Don't eat, we don't care. Just smile. Correction, we do care, but just smile; we won't ask." [*Id.* ¶ 21.] Also, on or around February 21, 2019, Weinstein allegedly mocked Plaintiff by

---

[3] It is unclear whether Plaintiff is referring to Dean Kovett or another individual here.

saying "if you come back to me with the same story with the new guy [you are dating], I will tell you I told you so and it will be your fault." [*Id.* ¶ 22.]

As a result of the Title IX proceeding, in February 2019, Rowan issued a no-trespass order to the male student who allegedly raped Plaintiff. [*Id.* ¶¶ 23, 30.] However, Plaintiff claims that, on September 1, 2019, Rowan lifted that order "arbitrarily" without Plaintiff's consent or knowledge. [*Id.*] In the spring 2019 semester, Plaintiff also requested accommodations for her dyslexia. [*Id.* ¶ 24.] In response, Plaintiff states that the staff yelled at Plaintiff to the point that she cried and asked, "Why are you here?" [*Id.*] It is unclear who Plaintiff is referring to as "staff" since she does not indicate in the Amended Complaint. Around this time, Plaintiff reported to the Disability Office that, because of the rape and sexual assault, she was feeling suicidal. [*Id.* ¶ 25.] Plaintiff claims that the Disability Office "refused to help her" and Rowan's "failure to assist Plaintiff denied her access to her program on the basis of her disabling condition." [*Id.*] Plaintiff claims that Weinstein allegedly stated that he was refusing to help and added, "I will come back to you when you are done this fucking fit," although Plaintiff does not clarify when or where this occurred. [*Id.* ¶¶ 25–26.]

On or around March 6, 2019, when Plaintiff followed up with Weinstein, he responded, "Do you want me to lose my job and everyone knows you are the reason I lost my job?" [*Id.* ¶ 27.] According to Plaintiff, in April 2019, Weinstein, on two occasions, called Plaintiff a "slut" and told her that he "does not help sluts." [*Id.* ¶ 29.] Eventually, Rowan convened a hearing and expelled the student who sexually

assaulted Plaintiff, although the hearing was delayed until October 2019, which forced Plaintiff to "relive the trauma of the rape." [*Id.* ¶ 33–34.] During the intervening months, Plaintiff alleges that Rowan "took little or no reasonable steps to keep the student away from Plaintiff and as a result, he was able to torment [her]." [*Id.*] Plaintiff alleges that in November 2019, Weinstein sarcastically congratulated Plaintiff on the expulsion of the student, whom he had said was a friend of his. [*Id.* ¶ 35.]

Moreover, Plaintiff claims that, in the fall of 2020, a male student stalked Plaintiff and had been stalking her since 2017. [*Id.* ¶ 36.] Plaintiff does not clearly state in the Amended Complaint whether this is a different individual from her prior complaints of stalking. Rowan was allegedly aware that this male student had a history of stalking Plaintiff, as she had previously reported it to Rowan several times. [*Id.*] Plaintiff alleges that, on or around October 2, 2020, she reported new incidents of stalking to John Woodruff and later to Weinstein in November 2020. [*Id.* ¶ 40–41.] According to Plaintiff, Woodruff informed her that there was nothing he could do about the stalking and responded she should "just transfer." [*Id.*] On or around October 23, 2020, Dean Kovett showed up, uninvited, at Plaintiff's campus therapy intake. [*Id.* ¶ 42.] Plaintiff alleges without explanation that, because of this, she was somehow unable to complete reporting the stalking. [*Id.*] The male student continued to stalk Plaintiff through December 2020. [*Id.* ¶ 41.]

Then, in October 2020, an unnamed student tutor at the writing center communicated with the Title IX office about Plaintiff's disability status. [*Id.* ¶ 43.] After the Title IX office spoke with the Writing Center about her disability status, the Writing Center canceled her tutoring sessions for the rest of the semester. [*Id.*] Plaintiff does not specify who from the Writing Center she spoke with, when, or where this interaction occurred. Plaintiff ended up struggling with her classes, failing a course, and taking incompletes in the remaining classes. [*Id.*]

Plaintiff further alleges that between March 2021 and July 2021, through her counsel, Plaintiff shared numerous concerns with Rowan regarding sex and gender discrimination, campus safety, dating violence at Rowan, stalking, and how Rowan planned to address the male student who perpetuated the rapes. [*Id.* ¶ 44.] Plaintiff claims that during June and July 2021, Rowan engaged in a "sham" Title IX investigation process with a predetermined outcome, gave incoherent guidance, and "played games" with Plaintiff. [*Id.* ¶¶ 45–49, 60(h).] When speaking to "University staff," Plaintiff alleges that she often encountered conflicting information, "was met with hostility," and was told to transfer schools. [*Id.* ¶ 46.]

Rowan accepted Plaintiff's second Title IX complaint on July 9, 2021. [*Id.* ¶ 50.] Nevertheless, Rowan dismissed most of it five days later, alleging that Plaintiff failed to show that Weinstein and Rowan engaged in severe, pervasive, and objectively offensive conduct, which denies a person equal access to their education. [*Id.* ¶¶ 50–52, 54–55.] Plaintiff filed a timely appeal on July 21, 2021; however, Rowan offered the same response. [*Id.* ¶ 53.]

Rowan contacted Plaintiff on August 12, 2021, and informed her that Weinstein was filing a no-contact order against her even though she had not been in contact with him since December 2020 when she had most recently reached out to him regarding safety concerns. [*Id.* ¶ 56.] Subsequently, on August 23, 2021, Rowan sent Plaintiff the no-contact order via email. [*Id.* ¶ 57.]

## II.   PROCEDURAL BACKGROUND

On September 14, 2021, Plaintiff filed a Complaint against Rowan and Weinstein. [Docket No. 1.] On November 24, 2021, the parties entered into a stipulation allowing Plaintiff to amend her complaint without prejudice to Defendants' ability to assert all defenses. [Docket No. 23.] Then, on December 7, 2021, Plaintiff filed the operative Amended Complaint against both Defendants. [Docket No. 25.] Plaintiff asserts eight claims: (1) sex and gender discrimination in violation of Title IX (Count One); (2) retaliation under Title IX (Count Two); (3) state-created danger under Section 1983 (Count Three); (4) discrimination under the Americans with Disabilities Act ("ADA") (Count Four); (5) discrimination under Section 504 of the Rehabilitation Act (mislabeled as "Count Four"); (6) violation of the New Jersey Law Against Discrimination ("NJLAD") (Count Five); (7) emotional distress (Count Six); and (8) negligent hiring, retention, and training of staff (Count Seven). [*Id.* ¶¶ 60–100.]

Pursuant to this Court's Individual Rules and Procedures, both Defendants submitted pre-motion letters, [Docket Nos. 26, 27], to which Plaintiff timely responded, [Docket Nos. 28, 29]. Thereafter, the Court entered an Order on January

27, 2022, allowing Defendants to file their motions to dismiss, noting that "it does not appear that Plaintiff has adequately addressed Defendants' concerns." [Docket No. 30.] Weinstein filed his pending Motion to Dismiss on February 3, 2022. [Docket No. 32.] Plaintiff timely filed her response in opposition on February 22, 2022, and Weinstein replied on March 14, 2022. [Docket Nos. 35, 40.] Meanwhile, Rowan filed its pending Motion to Dismiss on March 21, 2022. [Docket No. 34.] Plaintiff timely filed her response in opposition on March 7, 2022, and Rowan replied on March 28, 2022. [Docket Nos. 38, 42.]

## III. JURISDICTION

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Section 1331 grants the Court federal question jurisdiction over Counts One through Four and Eight as Plaintiff alleges claims arising under federal law. The Court has supplemental jurisdiction over Counts Five through Seven, as those claims and Counts One through Four and Eight "derive from a common nucleus of operative fact," rendering them "part of the same case or controversy" pursuant to Section 1367(a). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

## IV. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir.

2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## V.    ANALYSIS

In their Motions to Dismiss, Defendants set forth various arguments for dismissal. All Defendants argue that at least some of Plaintiff's claims are time-barred by a two-year statute of limitations. [Docket No. 32-1, at 10–11; Docket No. 34-1, at 5–7.] In addition to the statute of limitations defense, Rowan argues that Plaintiff's Title IX discrimination claim should be dismissed because it does not state a deliberate indifference claim. [Docket No. 34-1, at 7–17.] Rowan also argues that Plaintiff has failed to sufficiently allege a claim pursuant to Title IX retaliation, Section 1983, Section 504, and the ADA. [*Id.* at 17–32.] As for Plaintiff's remaining tort claims, Rowan argues that Plaintiff has failed to adequately allege a claim and failed to serve notice under New Jersey Tort Claims Act (the "TCA"). [*Id.* at 32–39.]

Weinstein separately argues that Plaintiff's Section 1983 claim is not premised on actionable conduct and that Plaintiff has not sufficiently pled NJLAD and intentional infliction of emotional distress ("IIED") claims against Weinstein. [Docket No. 32-1, at 12–26.]

### A.   Statute of Limitations

While the Court will address the parties' statute of limitations arguments in more detail with respect to each claim, it notes the following general rules here. A two-year statute of limitations applies to Title IX and Section 1983 claims. *D.N. v. Stockton Univ.*, Civ. No. 18-11932, 2019 U.S. Dist. LEXIS 108280, at *10, *16–18 (D.N.J. June 28, 2019). Also, in New Jersey, a two-year statute of limitations applies to ADA and Rehabilitation Act claims. *Muha v. Rutgers*, No. 08-2142, 2009 U.S. Dist. LEXIS 18744, at *17 (D.N.J. Mar. 11, 2009). "[A] cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citation and quotations omitted).

The continuing violation doctrine "is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)); *see also Gould v. Borough*, 615 F. App'x 112, 116 (3d Cir. 2015). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Montanez v. Sec'y*

*Pennsylvania Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell*, 263 F.3d at 292). As the Third Circuit has held,

> [i]n order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of continuing intent to discriminate. The consideration of "degree of permanence" is the most important of the factors.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citations omitted) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)) (first citing *West*, 45 F.3d at 755 n.9; and then citing *Berry v. Bd. of Supervisors of La. State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983)).

If the continuing violation doctrine applies, "the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* at 292. The doctrine, however, focuses on "continual unlawful acts, not continual ill effects from an original violation." *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (quoting *Cowell*, 263 F.3d at 293). Only a defendant's "affirmative acts" are included under this doctrine. *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 235 (3d Cir. 2014) (quoting *Cowell*, 263 F.3d at 293). "[A] government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." *Id.* at 236 n.8.

14

Here, Plaintiff does not dispute that a two-year statute of limitation applies. However, she asserts her claims are not barred since the conduct falls under the continuing violation doctrine. [Docket No. 35-1, at 5–7.] Plaintiff argues that Weinstein exhibited the same continuous act over years, "making offensive comments pertaining to rape and dating violence; engaging in appropriate behavior and flirtations with Ms. Handley; and antagonizing her based on the underlying sexual violence." [Docket No. 35-1, at 6–7.] Rowan, in turn, argues that Plaintiff's claims arise from a series of discrete events spread out over the course of months or years, thus the "continuing violation" theory does not render the claims timely. [Docket No. 34-1, at 5–7.] Weinstein similarly argues that only a small selection of Plaintiff's allegations occurred within the statute of limitations. [Docket No. 31-1, at 10–11.]

### B.    Title IX Gender and Sex Discrimination

Plaintiff's first count alleges that Rowan engaged in gender and sex discrimination in violation of Title IX. [Docket No. 25 ¶¶ 60–62.] As with many of the claims, the Court will first address the statute of limitations issue before turning to a discussion of the parties' arguments.

### 1.    Statute of limitations

Plaintiff's first claim is for gender and sex discrimination, which she alleges began in approximately the spring of 2018 and continued to and through the statute of limitations period beginning on September 14, 2019. By the Court's reading of the

Amended Complaint, Plaintiff has pled sufficient facts to establish a continuing violation with respect to her Title IX gender and sex discrimination claims.

### 2.    Failure to state a claim

A private Title IX and Section 1983 claim may lie against a public school in cases of student-on-student harassment if the funding recipient is deliberately indifferent to sexual harassment, of which the recipient has actual knowledge, and that harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).

"Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." *Saravanan v. Drexel Univ.*, Civ. No 17-3409, 2017 U.S. Dist. LEXIS 193925, at *18 (E.D. Pa. Nov. 24, 2017). Under Title IX, deliberate indifference requires "a response (or failure to respond) that is 'clearly unreasonable in light of the known circumstances.'" *Keel v. Delaware State Univ. Bd. of Trustees*, Civ. No. 17-1818, 2019 U.S. Dist. LEXIS 20657, at *16 (D. Del. Feb. 8, 2019) (quoting *Davis*, 526 U.S. at 633). To establish deliberate indifference, a plaintiff must show that the school knew about the plaintiff's sexual assault and ensuing harassment and failed to respond adequately. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989) ("[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to

address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.")

To succeed on this claim, a plaintiff must allege that an "appropriate person" or "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf" had actual knowledge of the alleged harassment or assault. *Id.* A perpetrator of sex-based harassment who has the authority to address Title IX violations and has knowledge of his own sex-based harassment is not an appropriate person, however. *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 126 (3d Cir. 2020) ("A perpetrator of sexual harassment who has authority to remedy Title IX violations is not an appropriate person for assessing a school district's Title IX liability in a private right of action.")

The Amended Complaint, as currently pled, alleges that Plaintiff was the victim of severe and pervasive conduct; moreover, Rowan's alleged remedial steps with respect to these allegations were woefully insufficient, and likely constituted deliberate indifference. However, the crucial fact that Plaintiff does not adequately plead in the Amended Complaint is who, precisely, was aware of these allegations. Plaintiff points generally to "the University" and Weinstein but does not specify the person or persons responsible for the alleged deliberate indifference. While Plaintiff does refer to Dean Kovett, Woodruff, and Rowan's counsel, she does not allege what the individuals knew of the alleged harassment, and when. This is a crucial fact

because this claim requires Rowan to have been aware of the complained of conduct—as noted above, an "appropriate person" must be notified. In the Amended Complaint's current form, Plaintiff has only clearly identified Weinstein as somebody who was aware of the alleged conduct. However, Weinstein, as an alleged perpetrator of the sexual harassment, cannot himself be the "appropriate person" to have actual knowledge. Plaintiff may well have notified an "appropriate person" in the course of her time at Rowan; however, she has not adequately alleged that in her Amended Complaint. Therefore, the Court must dismiss this Count. It will do so without prejudice, however, meaning that Plaintiff will have the opportunity to clarify whom she notified and when, in support of her claim.

### C.    Title IX Retaliation

Plaintiff's second count alleges that Rowan retaliated against her in violation of Title IX. [Docket No. 25 ¶¶ 63–68.]

#### 1.    Statute of limitations

The Amended Complaint appears to only rely on facts that occurred within the statute of limitations period for this claim. Therefore, there is no statute of limitations issue.

#### 2.    Failure to state a claim

"[W]hen a funding recipient retaliates against a person *because* [she] complains of sex discrimination, this constitutes intentional discrimination on the basis of sex, in violation of Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (citations omitted). To establish a Title IX retaliation claim, Plaintiff must allege that

Rowan retaliated against her because she complained of sex discrimination, that Rowan knew she complained of such, and that Rowan took adverse action against her because of her complaints. *Yan Yan v. Penn State Univ.*, 529 F. App'x 167, 171 (3d Cir. 2013); *Jackson*, 544 U.S. at 184. A causal connection must exist between the protected activity and the adverse action. *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017).

Plaintiff alleges that Rowan and Weinstein retaliated against her for utilizing Rowan's Title IX review process. [*See* Docket No. 25 ¶ 64.] Specifically, Plaintiff alleges that Rowan took adverse action when "the University threatened Plaintiff that Weinstein would be filing a no-contact order" and when it did issue the no-contact order. [*Id.* ¶ 60(b).] Rowan argues that the no-contact order was an act of Weinstein, and that Plaintiff does not allege the order impacted her educational opportunities in any substantive way. [Docket No. 42, at 7.] Lastly, Rowan contends that while Plaintiff refers to being fearful about returning to campus or having reservations about continuing with the Title IX process, those feelings are not related to Rowan's allegedly adverse action, and neither relates to the no-contact order. [*Id.*]

Plaintiff's basis for retaliation appears to be counterintuitive. It does appear, in this case, that an order precluding Plaintiff from contacting Weinstein—and, necessarily, Weinstein from contacting Plaintiff—is non-retaliatory on its face. To that end, the Amended Complaint does not adequately allege how the no-contact order is a sufficient basis for a retaliation claim. First, other than generally pointing to the "University," Plaintiff does not allege specifically who from Rowan threatened

19

her or how a no-contact order with Weinstein adversely impacted her. Second, Plaintiff has not alleged sufficient facts to show that the no-contact order was a retaliatory act. And third, Plaintiff does not make clear how this constitutes adverse action on the part of Rowan. Therefore, as to this claim, the Court finds that Plaintiff's pleadings are conclusory and substantively deficient, warranting its dismissal without prejudice.

### D.    42 U.S.C. § 1983

Plaintiff's third count alleges that Rowan and Weinstein violated 42 U.S.C. § 1983 under the state-created danger theory. [Docket No.25 ¶¶ 69–76.]

### 1.    Statute of limitations

As noted above, the continuing violation doctrine only applies to a defendant's "affirmative acts," and "a government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." *Tearpock-Martini*, 756 F.3d at 235, 236 n.8 (quoting *Cowell*, 263 F.3d at 293). And, as the Court will discuss below, the same is true regarding the state-created danger theory in general. Therefore, the Court will only consider Defendants' affirmative acts in determining whether the continuing violation doctrine applies here. The Court notes that most of Plaintiff's allegations, as discussed below, address Defendants' inaction in response to her complaints. [*See* Docket No. 38, at 8–10.]

However, Plaintiff argues that Weinstein's inappropriate advances towards him constitute affirmative acts that are subject to the continuing violation doctrine.

Given the pleadings, which illustrate repeated and ongoing conduct by Weinstein,

Plaintiff is entitled to invoke the continuing violation doctrine for these allegations.

Therefore, the Court will consider certain allegations that occurred prior to the

statute of limitations period. In any event, the Court notes that most of the

allegations that support this claim against Rowan occurred within the statute of

limitations period.

### 2.   Failure to state a claim

The Third Circuit applies a deliberate indifference standard to state-created

danger claims under Section 1983. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908

(3d Cir. 1997). A state-created danger claim requires a plaintiff allege that

> 1. the harm ultimately caused was foreseeable and fairly direct;
>
> 2. a state actor acted with a degree of culpability that shocks the conscience;
>
> 3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (citing *Bright v.*

*Westmoreland Cnty.*, 443 F.3d 276, 281–82 (3d Cir. 2006). "The state-created danger

doctrine does not reach failures to intervene." *Jones v. Pi Kappa Alpha Int'l Fraternity,*

*Inc.*, 765 F. App'x 802, 809–10 (3d Cir. 2019); *see also Morrow v. Balaski*, 719 F.3d

160, 179 (3d Cir. 2013) (rejecting appellants' "attempts to morph passive inaction into affirmative acts").

### a.      Claim against Rowan

As noted above, Plaintiff alleges that Defendants created a danger in violation of § 1983 both with respect to the alleged perpetrator of sexual and dating violence against her and with respect to Weinstein's alleged actions. [*See* Docket No. 25 ¶¶ 72–74.] The Court has already determined in its discussion of Plaintiff's Title IX sex and gender discrimination claim that Plaintiff has not adequately pled that Rowan did not have sufficient knowledge to satisfy the deliberate indifference standard—which applies to both Title IX claims and state-created danger claims, *see Morse*, 132 F.3d at 908—with respect to Weinstein's alleged conduct. *See supra*. Put succinctly, Plaintiff's Amended Complaint does not allege if or when she notified Rowan of Weinstein's alleged actions. Therefore, she has failed to allege that Rowan was aware of Weinstein's alleged conduct such that Rowan could be liable for a state-created danger claim.[4]

The only alleged conduct that Plaintiff does not attribute to Weinstein that forms the basis for this claim against Rowan is that Rowan (1) "permitt[ed] students to subject Plaintiff to dating violence, sexual harassment, stalking, and rape" and (2) "refused to take seriously the allegations Plaintiff brough[t] forward in her Title IX investigation," thereby "subject[ing] Plaintiff to ongoing state-created danger."

---

[4] *See also infra* Section V(D)(2)(b) (discussing the fact that Weinstein is not a private actor).

[Docket No. 25 ¶¶ 72–73.] Plaintiff needs to do more, however, to establish that Rowan engaged in any affirmative conduct that created this danger. In its current form, the Amended Complaint is attempting to hold Rowan liable for its alleged failure to intervene. This, however, is an insufficient basis for a state-created danger claim. *See L.R.*, 836 F.3d at 242. In fact, Plaintiff's argument that Rowan's inaction on her Title IX investigation created a danger has been rejected by the Third Circuit's standard; Plaintiff cannot argue that Rowan created a danger by doing nothing with her Title IX complaint created a danger when the standard requires comparing the defendant's actions to what would have happened "had the state not acted at all." *Id.*

To the extent that Plaintiff argues that Rowan created a danger by revoking the no-contact order between her and her unnamed assailant—which could plausibly constitute affirmative conduct—the Court still finds that the allegations as pled are insufficient. First, as Rowan points out, Plaintiff does not adequately establish that this action took place inside the two-year statute of limitations period. [Docket No. 34-1, at 24.] Second, by Plaintiff's own allegations, Rowan affirmatively took steps to address Plaintiff's concerns, including by eventually expelling the student in question and engaging in an ongoing, internal Title IX investigation. [*See* Docket No. 24 ¶¶ 34, 44.] It is not clear what remains as to this claim. As a result, the Court finds that Plaintiff fails at this juncture to adequately state any viable state-created danger claim against Rowan.

### b.    Claim against Weinstein

Plaintiff also brings a state-created danger claim against Weinstein. As this Court has previously held, "the state-created danger theory is 'a narrow exception to the general rule that the state has no duty to protect its citizens from **private harms**.' A public employee, acting as a state actor, cannot cause a 'private harm' as *Henry* [*v. City of Erie*] requires." *Jowett v. Churchill*, No. 20-13083, 2021 U.S. Dist. LEXIS 164661, at *21 (D.N.J. Aug. 31, 2021) (quoting *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2012)); *see also id.* at *18–21 (citing multiple cases from within the Third Circuit coming to a similar conclusion). As the Tenth Circuit has written,

> Courts simply need not indulge [the state-created danger theory] where a state actor, rather than a private individual, is directly responsible for causing the harm. This is because the state actor directly responsible for the deprivation of life, liberty, or property may be held personally liable under § 1983. Whether other state actors further down the chain of causation also may be liable poses separate questions of personal and/or supervisory liability.

*Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012).

In other words, the state-created danger theory exists to permit plaintiffs to hold the state liable where such liability would otherwise be impossible. Therefore, because there are other means by which the state can be liable for harm caused by a state actor, the state-created danger theory does not apply because it would be superfluous. Therefore, it is impossible to have a state-created danger case when the ultimate harm-doer is a state actor. Here, Weinstein is a state actor. If the allegations

against him are true, then there are other means by which Plaintiff can hold him accountable.

Plaintiff cites *Phillips v. County of Allegheny*, a 2008 Third Circuit case, in arguing that "[t]here is no 'private perpetrator' requirement." [Docket No. 35, at 11 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)).] Plaintiff summarizes *Phillips* as having held that the plaintiff—the mother of the decedent— was permitted to bring a state-created danger claim for "the assault and murder of a private citizen by a state actor." [*Id.*] This is incorrect. The perpetrator in *Phillips* was a private actor, not a state actor. *See Phillips*, 515 F.3d at 228–30.

In *Phillips*, the perpetrator **had been** a 911 dispatcher, but was not at the time he caused the harm. *Id.* He "used his position to surreptitiously gain access to unauthorized information" in an attempt to determine the location of his ex-girlfriend's new boyfriend. *Id.* Crucially, he then had **other** 911 dispatchers also provide him such information without authorization. *Id.* at 229. He was initially suspended and then fired, at which point he contacted numerous 911 dispatchers, explained the circumstances of his termination, told them he "had nothing left to live for," and threatened that the boyfriend and a former co-worker—who had notified their superiors about the perpetrator's unauthorized access—would "pay for putting him in his present situation." *Id.* "Later that afternoon, [the perpetrator] shot and killed [the boyfriend/decedent] with a handgun. [He] also shot and killed [the former co-worker] and her sister." *Id.* The boyfriend's mother then sued numerous 911 Call

Center employees—but not the perpetrator himself—on a state-created danger

theory. *Id.* at 228–30.

Phillips does not contradict the general rule that the direct harm must be

perpetrated by a private actor. In *Phillips,* the perpetrator was acting as a private actor

when he killed the decedent. He was no longer employed—and no longer a state

actor—by the time the decedent suffered any harm. Rather, it was the 911

dispatchers who provided unauthorized information to the perpetrator who

constituted "state actor[s who] affirmatively used [their] authority in a way that

created a danger to the citizen or that rendered the citizen more vulnerable to danger

than had the state not acted at all." *See L.R.*, 836 F.3d at 242. Their actions, in effect,

created or worsened the risk that the perpetrator—a private actor—would harm the

decedent. Therefore, *Phillips* does not change this Court's analysis regarding whether

the state-created danger doctrine applies to harms directly enacted by state actors.

To the extent that Plaintiff argues that Weinstein's conduct enabled the

unnamed male student to subject Plaintiff to dating and sexual violence, this claim

does not survive. Plaintiff argues that Weinstein's failure to report Plaintiff's

complaints about dating and sexual violence constituted "an affirmative decision on

his part." [Docket No. 35, at 8.] However, as discussed above, a failure to act is an

insufficient basis for a state-created danger claim. *See L.R.*, 836 F.3d at 242. As

above, Plaintiff cannot argue that Weinstein created a danger by doing nothing when

the standard requires comparing the defendant's actions to what would have

happened "had the state not acted at all." *Id.* Therefore, Weinstein's alleged failure

to report Plaintiff's complaints is not a valid basis for a state-created danger claim, and the Court will dismiss the Section 1983 state-created danger claim (Count III) in its entirety, without prejudice.

### E.    ADA and Rehabilitation Act Section 504

Plaintiff's fourth count alleges that Rowan discriminated against her in violation of the ADA. [Docket No. 25 ¶¶ 77–81.] Her fifth count alleges that Rowan discriminated against her in violation of Section 504 of the Rehabilitation Act. [Docket No. 25 ¶¶ 82–86.]

### 1.    Statute of limitations

As Plaintiff notes, "most of the [alleged] disability discrimination took place within the filing period," specifically in fall 2020 and summer 2021. [Docket No. 38, at 11; *see also* Docket No. 25 ¶¶ 77–86.] But Plaintiff does argue that certain pre-filing period events warrant the implementation of the continuing violation doctrine, including unnamed staff "yell[ing] at her to the point she cried" and asking her, "Why are you here?" when she requested accommodations in 2019. [*See* Docket No. 38, at 11.] For the purposes of this Opinion, the Court will apply the continuing violation doctrine to these allegations.

### 2.    Failure to state a claim

Both the ADA and Section 504 prohibit discrimination on the basis of disability. *C.M. v. Pemberton Twp. High Sch.*, No. 16-9456, 2017 U.S. Dist. LEXIS 11434, at *14 (D.N.J. Jan. 27, 2017). "Because the same standards govern both . . .

[Rehabilitation Act] and ADA claims," the Court "may address both claims in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009); *see also C.M.*, 2017 U.S. Dist. LEXIS 11434, at *14 (quoting *Weidow v. Scranton Sch. Dist.*, 460 F. App'x 181, 184 (3d Cir. 2012)).

To state a claim under Section 504, a plaintiff must allege that

(1) the student was disabled; (2) (s)he was 'otherwise qualified' to participate in school activities; (3) the school district received federal financial assistance; and (4) the student was excluded from participation in or denied the benefits of the educational program receiving the funds, or was subjected to discrimination under the program.

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014).

Similarly,

[t]o establish a claim under Title II of the ADA, Plaintiff[] must allege that (1) [she] is a qualified individual with a disability; and that (2) [she] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity (3) by reason of her disability.

*C.M.*, 2017 U.S. Dist. LEXIS 11434, at *15–16 (citing *Lopez v. Beard*, 333 F. App'x 685, 687 n.1 (3d Cir. 2019)).

Crucially, under both statutes, there must be a causal connection between the alleged harm and the plaintiff's disability. *See id.* at *17. Additionally, claims for compensatory damages, which Plaintiff seeks here, under both statutes require that the plaintiff allege "intentional discrimination." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013).

The "intentional discrimination" standard demands proof that, at a minimum, the school district exhibited "deliberate indifference" to the underlying act of discrimination. To show deliberate indifference, the

> plaintiff must establish "(1) **knowledge** that a federally protected right is substantially likely to be violated . . . and (2) **failure to act** despite that knowledge." [It] "does not require a showing of personal ill will or animosity toward the disabled person," but "must be a deliberate choice, rather than negligence or bureaucratic inaction."

*Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014) (citations omitted) (quoting *S.H.*, 729 F.3d at 263, 265) (emphasis in original).

Rowan first argues that Plaintiff fails to adequately allege that she was discriminated against because of her disabilities. [Docket No. 34-1, at 30–31.] However, as Rowan notes in its brief, Plaintiff explicitly alleges in her Amended Complaint, for example, that Rowan "staff yell[ed] at her **for having dyslexia**." [Docket No. 25 ¶ 78(d) (emphasis added).] Plaintiff further alleges that such discrimination resulted in her not being able to participate in or take advantage of certain benefits to which she was entitled, such as tutoring sessions with the writing center, which, in turn, resulted in her inability to continue with certain classes. [*Id.* ¶ 78(d), (e).] While Plaintiff could have pled these claims with more detail, and while the allegations might fail under the more scrutinous summary judgment standard, Plaintiff has met her burden with regards to this element at this stage.

However, because Plaintiff seeks compensatory damages, she also must allege that Rowan intentionally discriminated against her. As with some of her earlier claims, Plaintiff fails to meet this burden here because she does not adequately allege that Rowan had "knowledge that a federally protected right is substantially likely to be violated." *See S.H.*, 729 F.3d at 265. While Plaintiff is correct that Rowan generally knew about her disabilities and perhaps even her attempts to get services,

her allegations are too general with respect to whether Rowan had knowledge of the alleged discrimination that she suffered. The Amended Complaint merely alleges that "staff" mistreated her and does not provide any details to support whether Rowan was ever aware of what allegedly occurred. Therefore, as currently pled, Plaintiff's claims fail insofar as they do not adequately allege that Rowan subjected her to "intentional discrimination" as defined by the Third Circuit. However, Plaintiff will be afforded an opportunity to address this deficiency by amending her complaint.

### F.   NJLAD

Plaintiff's sixth count alleges that both Rowan and Weinstein violated the NJLAD. [Docket No. 25 ¶¶ 87–90.]

#### 1.   Statute of limitations

For the same reasons as Plaintiff's Title IX discrimination claims, the Court finds that it is appropriate to invoke the continuing violation doctrine with respect to Plaintiff's gender and sex discrimination claims under the NJLAD. However, as with her disability discrimination claims discussed above, [*see supra* Section V(E)(1)], the continuing violation doctrine need not apply to her disability discrimination claims under the NJLAD because the only allegations that support this claim occurred within the statute of limitations period.

#### 2.   Failure to state a claim

Plaintiff alleges that Rowan and Weinstein discriminated against her on the basis of gender, sex, and disability status. [Docket No. 25 ¶ 88.] To state her claims

under the NJLAD in the educational context, Plaintiff must allege that "the complained-of conduct (1) would not have occurred **but for**" Plaintiff's gender, sex, or disability status, respectively, "and it was (2) **severe or pervasive** enough to make a (3) **reasonable**" person of the same gender, sex, or disability status, respectively, "believe that (4) the conditions of [education] are altered and the [educational] environment is hostile or abusive." *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 603–04 (1993); *see also Shana v. Rutgers*, No. A-5575-08T3, 2010 N.J. Super. Unpub. LEXIS 2461, at *45–46 (N.J. Super. App. Div. Oct. 12, 2010). "Whether the conduct is so severe as to cause the environment to become hostile or abusive can be determined only by considering all the circumstances, and this determination is left to the trier of fact." *Taylor v. Metzger*, 152 N.J. 490, 502 (1998) (quoting *Nadeau v. Rainbow Rugs, Inc.*, 675 A.2d 973, 976 (Me. 1996)).

Crucially in this case, "the LAD recognizes vicarious liability: a **supervisor's** actual or constructive knowledge can be imputed to" his employer. *See George v. Bd. of Educ.*, 34 F. Supp. 3d 442, 456 (D.N.J. 2014) (emphasis added); *see also Lehmann*, 132 N.J. at 623 ("We recognize that although we have declined to hold employers strictly liable for hostile work environment sexual harassment by supervisors, we have created a standard that may often result in employers being held vicariously liable for such harassment.") "An employer will be found vicariously liable if the supervisor acted within the scope of his or her employment." *Lehmann*, 132 N.J. at 624. This "depends on the facts of the case." *See id.* Conversely, "[a]n employer is

31

liable for the conduct of **non-supervisory** employees only . . . if it knows or reasonably should have known of the misconduct of non-supervisory employees and fails to take prompt and adequate remedial action." *Tyson v. CIGNA Corp.*, 918 F. Supp. 836, 841 (D.N.J. 1996) (emphasis added).

### a.  Rowan

With respect to gender- and sex-based discrimination, Plaintiff attempts to attribute all of Weinstein's alleged conduct to Rowan. [*See* Docket No. 25 ¶ 60(e)(i).] This could only be the case if the above conditions are met, first and foremost among them being that Weinstein has to be a supervisor. If he was not a supervisor, then Plaintiff's NJLAD claims fail because, as outlined above, she has not adequately shown that Rowan knew or should have known of Weinstein's conduct. However, if he was a supervisor, then the analysis will depend on whether his actions were in the scope of his employment. Only once that has been established would the Court turn to whether Plaintiff's Amended Complaint has adequately alleged the four prongs for an NJLAD claim: that "the complained-of conduct (1) would not have occurred **but for**" Plaintiff's gender, sex, or disability status, respectively, "and it was (2) **severe or pervasive** enough to make a (3) **reasonable**" person of the same gender, sex, or disability status, respectively, "believe that (4) the conditions of [education] are altered and the [educational] environment is hostile or abusive." *Lehmann*, 132 N.J. at 603–04.

Here, Plaintiff has adequately alleged that Weinstein is a supervisor based on his responsibilities and actions. Weinstein's arguments to the contrary are inappropriate at this stage, as they effectively would require the Court to make a finding of fact. Moreover, the Amended Complaint adequately alleges that Weinstein was acting within the scope of his employment, considering that Plaintiff's relationship with Weinstein most centrally revolved around her needing his assistance with disability-related issues. Therefore, the first two elements have been adequately pled here.

Turning to the remaining elements, Plaintiff has adequately pled that Weinstein's complained-of conduct would not have occurred but for her gender and/or sex. The bulk of Weinstein's alleged conduct was explicitly sexual in nature and made clear references to Plaintiff's characteristics as a woman. She has adequately alleged that this conduct would not have occurred but for her gender and/or sex.

She has also adequately alleged the remaining three elements: that the behavior was severe or pervasive enough for a reasonable woman to "believe that . . . [her] conditions of [education] [were] altered and the [educational] environment [was] hostile or abusive." *See id.* It is hard to dispute that Weinstein's alleged conduct—including but not limited to repeatedly commenting on Plaintiff's attire and body, sending her explicit and suggestive messages, and generally demeaning her on the basis of her gender and/or sex—has no place in an educational environment. Plaintiff has adequately alleged that it was severe and pervasive

33

enough to make a reasonable woman feel that her educational environment had been altered, especially given Weinstein's role within her educational environment. Therefore, the Court holds that Plaintiff's NJLAD claim against Rowan survives with respect to gender and sex discrimination.

Conversely, the Court finds that there is a lack of adequate pleading with respect to her disability-based NJLAD claim. Primarily, it is not clear from the Amended Complaint precisely who allegedly discriminated against Plaintiff based on her disability, which makes it impossible to determine how and whether or not that person or those people were supervisors. Therefore, the Court will dismiss Plaintiff's disability-based NJLAD claim against Rowan, without prejudice.

### b.    Weinstein

The NJLAD "imposes individual liability for 'any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts [the NJLAD] forbid[s].'" *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 462 (D.N.J. 2009) (quoting N.J. STAT. ANN. 10:5-12(e)). In order for an employee to be liable for aiding and abetting, the plaintiff must allege that

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

Factfinders should consider five factors in determining if the third element—whether the defendant "substantially assist[ed]"—has been satisfied: "(1) the nature of the act encouraged; (2) the amount of assistance given by the supervisor; (3) whether the supervisor was present at the time of the asserted harassment; (4) the supervisor's relations to the others; and (5) the state of mind of the supervisor." *Ivan*, 595 F. Supp. 2d at 462.

Crucially here, "a supervisor may be liable for aiding and abetting his or her own conduct." *Id.* (citing *Hurley*, 174 F.3d at 126). Put succinctly, a supervisor has "a duty to act against harassment," and "'[w]hen [he] flouts this duty he subjects himself and his employer to liability.'" *Id.* at 462 n.7 (quoting *Hurley*, 174 F.3d at 126). Finally, "for a defendant to be individually liable for aiding and abetting, the employer must also be liable under the" NJLAD. *Id.* at 463.

Here, Plaintiff's Amended Complaint has adequately pled all that is required to sustain gender- and sex-based NJLAD claims against Weinstein. The Court has already determined that the Amended Complaint adequately alleges that Weinstein is a supervisor. It also adequately alleges that Weinstein performed wrongful acts and, as the wrongdoer himself, was aware of his role in illegal activities. Moreover, the Amended Complaint's allegations adequately support a finding that the five factors regarding substantial assistance all illustrate that he is liable: Plaintiff alleges that Weinstein himself engaged in conduct that violated the NJLAD while he was in a position of relative authority over Plaintiff. In other words, the Amended Complaint adequately alleges that Weinstein "flout[ed]" his {duty to act against

harassment," thereby "subject[ing] himself and [Rowan] to liability" under the NJLAD. *See id.* at 462 n.7. Therefore, Plaintiff's claims against Weinstein for gender- and sex-based discrimination under the NJLAD will survive.

However, because the Court rules that Plaintiff's disability-based NJLAD claim against Rowan as pled must be dismissed, that claim also fails against Weinstein.

*Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998).

### G.   IIED; Negligent Hiring, Retention, and Training; and Failure to Train

Plaintiff's seventh count alleges that both Rowan and Weinstein committed the tort of intentional infliction of emotional distress. [Docket No. 25 ¶¶ 91–93.] Her eighth and final count alleges that Rowan committed the torts of negligent hiring, retention, and training and failure to train with respect to Weinstein. [Docket No. 25 ¶¶ 94–100.]

#### 1.   Rowan

Rowan argues that these claims must be dismissed pursuant to the New Jersey Tort Claims Act, N.J. STAT. 59:8-9 (the "NJTCA"). The NJTCA states that, unless otherwise stated in the Act, "a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J. STAT. § 59:2-1(a). Pursuant to the NJTCA, a plaintiff seeking to sue a public entity via one of the NJTCA's exceptions must first file a

notice of claim. *Id.* § 59:8-8. That "claim must be presented 'not later than the 90th day after accrual of the cause of action.'" *McNellis-Wallace v. Hoffman*, 464 N.J. Super. 409, 416–17 (App. Div. 2020). "[A] claimant will be 'forever barred' from recovery against a public employee or entity if she fails 'to file the claim with the public entity within 90 days of accrual," except if, "at any time within one year after the accrual of his claim' . . . he can show 'sufficient reasons constituting extraordinary circumstances for his failure to file' within ninety days." *Id.* at 417 (citing N.J. STAT. § 59:8-9). Here, Plaintiff did not provide notice pursuant to the NJTCA.[5] Plaintiff alludes to filing permission to file a late notice of claim, [Docket No. 38, at 31], but does not allege in her Amended Complaint that she has done so. Nor is it clear that Plaintiff would be entitled to file a late notice, given that it must be filed within one year of the accrual of the claim and the most recent allegations that Plaintiff includes in her Amended Complaint occurred on August 23, 2021. [*See* Docket No. 25 ¶ 57.]

Plaintiff also argues that she is not required to file a notice of claim for the negligent hiring, retention, and training and failure to train claims. [Docket No. 38, at 31.] The Court rejects this argument, as New Jersey courts have explicitly held that negligent hiring claims are permissible against public entities under the NJTCA,

---

[5] Plaintiff appears to concede this point, instead arguing that Rowan does not qualify as a public entity that is subject to the TCA. [*See* Docket No. 38, at 31–32.] The Court rejects this argument. *See, e.g.*, *Bowman v. Rowan Univ.*, 2018 U.S. Dist. LEXIS 212682, at *14 (holding that Rowan is a public entity subject to the NJTCA).

meaning that they are subject to NJTCA notice requirements. *See, e.g.*, *Denis v. City of Newark*, 307 N.J. Super. 304 (App. Div. 1998) (recognizing the existence of a cause of action against a public entity for negligent hiring and/or retention).

Therefore, the Court will dismiss Plaintiff's claims against Rowan for IIED and negligent hiring, retention, and training and failure to train.[6]

### 2.    Weinstein

Plaintiff also alleges an IIED claim against Weinstein.

#### a.    Statute of limitations

As with the Title IX gender and sex discrimination claims discussed above, Plaintiff's allegations against Weinstein regarding her IIED claim warrant invoking the continuing violation doctrine, as Weinstein's actions continued with seeming regularity from the first encounter in the spring of 2018 to and through the statute of limitations period beginning on September 14, 2019.

---

[6] The Court would also dismiss these claims on the merits. The IIED claim against Rowan fails as pled because it severely lacks details. Moreover, Plaintiff's opposition to Rowan's Motion to Dismiss refers only to Weinstein's actions, and not Rowan's, and does not attempt to attribute his actions to Rowan in any way. [*See* Docket No. 38, at 32–35.]

With respect to the negligent hiring, retention and training and failure to train claims, Plaintiff cursorily argues that Rowan "should have known that [Weinstein] was engaging in this conduct." [*Id.* at 35–36.] However, as discussed above, Plaintiff makes no allegations describing why, when, or how Rowan should have learned about the alleged conduct, nor who specifically should have known about the conduct. Plaintiff does not adequately allege, then, that Rowan "knew or had reason to know of the particular [alleged] unfitness, incompetence, or dangerous attributes of [Weinstein] and could reasonably have foreseen that such qualities created a risk of harm to other persons." *See Di Cosala v. Kay*, 91 N.J. 159,  (1982). Therefore, those claims are inadequately pled as well.

38

### b.     Failure to state a claim

To state a claim for IIED, a plaintiff must establish that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) the plaintiff's emotional distress was so severe that no reasonable [person] could be expected to endure it." *Torrey v. N.J.*, No. 13-1192, 2014 U.S. Dist. LEXIS 31146, at *68–69 (D.N.J. Mar. 11, 2014) (cleaned up) (quoting *Swingle v. Novo Nordisk, Inc.*, 2009 U.S. Dist. LEXIS 76991, at *23–24 (D.N.J. Aug. 27, 2009)).

Here, Weinstein asserts that Plaintiff's IIED claim fails because the alleged conduct is not "outrageous," and Plaintiff does not allege severe emotional distress, or that she suffered from a specific ailment and sought treatment for it. [Docket No. 32-1, at 21–26.] In doing so, Weinstein attempts to characterize his conduct as merely "flirting" and "a single sarcastic comment." [*See* Docket No. 32-1, at 23–24.]

The Court disagrees, and it is hard to take Weinstein's response seriously. As it has already detailed above, Plaintiff has alleged facts far more severe than Weinstein suggests. As to the elements, it is not in dispute that Weinstein acted intentionally. Next, the Court finds that Weinstein's alleged conduct was outrageous: he was a University staff member tasked with assisting Plaintiff navigate the her educational experience with respect to her disabilities. It is outrageous that he allegedly utilized his position of relative power over her to flirt with her, send her unwanted and unsolicited messages, and callously dismiss her valid complaints about dating and sexual violence.

Next, Plaintiff adequately alleges that Weinstein's alleged conduct caused her emotional distress that was so severe that a reasonable person should not be expected to endure it. Not only does Plaintiff explicitly allege this in her Amended Complaint; she also provides numerous examples of how his behavior affected her and her experience at Rowan. The Court notes, as it has previously, that the Amended Complaint could do this more clearly, effectively, and convincingly; however, that is not the standard by which the Court judges a complaint in the motion to dismiss context. Therefore, the Court will deny Weinstein's Motion with respect to Plaintiff's IIED claim against him.

## VI.   CONCLUSION

The Court does not take lightly the very serious and troubling allegations in this matter. However, Plaintiff has not met her pleading burden to survive a motion to dismiss as a matter of law with respect to many of her claims. Therefore, based on the above analysis, the Court will grant Defendants' Motions, in part, and deny them, in part. Plaintiff's Amended Complaint will be dismissed, without prejudice, in part. An accompanying Order shall issue.

September 9, 2022
Date

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge